UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**JOHN P. ADAMO,**
    Debtor

Chapter 7
Case No. 06-12077-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**HYUNDAI MOTOR FINANCE CO.,**
    Plaintiff
v.
**JOHN P. ADAMO,**
    Defendant

Adv. P. No. 07-1309

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

MEMORANDUM

I. INTRODUCTION

The matter before the Court is the Motion for Summary Judgment filed by Hyundai Motor Finance Co. ("Hyundai") with respect to its Complaint against the debtor, John P. Adamo (the "Debtor"). Through its Complaint and its Motion for Summary Judgment, Hyundai, an unsecured creditor with a claim against the Debtor's estate in the amount of $675,786.86, seeks entry of a judgment denying the Debtor a discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and (B), (a)(3), (a)(4)(A), (a)(5), and (a)(6)(A).

The Court heard the Motion and the Debtor's Opposition on February 13, 2008. At the conclusion of the hearing, the Court afforded the Debtor the opportunity to submit an affidavit in opposition to the Motion for Summary Judgment. Counsel to Hyundai also

1

submitted a supplemental affidavit, in addition to its previously filed affidavit. Counsel to Hyundai attached copies of the Debtor's "Optima Platinum from American Express" credit card statements from December 2005 through October 2007 to the supplemental affidavit, as well as documents containing descriptions of computer software programs known as Wizetrade, Wizefinder, and Wizefeed. The Debtor incurred charges for Wizefinder and Wizefeed on his American Express credit card. According to a copy of information contained on the website of Wizefinder, Wizefinder "can find stocks for you to trade and transfer them to Wizetrade," which is described as "a powerful stock trading software program and stock research tool used to conduct stock market analysis and quickly chart potential entry and exit signals on any stock symbol." Wizefeed is described as a support package which "includes an array of services to assist you in becoming a more successful trader" and which "powers your Wizetrade® software by providing you real-time data exchange feeds from the NYSE, AMEX, NASDAQ, OTC and other exchanges."

In addition to those evidentiary materials, Hyundai, in conjunction with its Motion for Summary Judgment, submitted the following documents: 1) a Judgment by Default upon Assessment of Damages issued by the Essex County Superior Court, Department of the Trial Court, in favor of Hyundai and against the Debtor, Danvers Hyundai, Inc., and International Motors of Beverly, Inc. d/b/a International Motor Kars of Beverly, in the sum of $375,000 plus interest from October 6, 2000; 2) the Notice of Docket Entry reflecting the entry of final judgment in favor of Hyundai on February 25, 2004 in the state court proceeding; 3) the Debtor's Schedules and Statement of Financial Affairs, including his

2

amended Schedules I and J; 4) a warranty deed dated June 28, 2005 from John F. Wiesmann and Joan Wiesmann to "Dwana Adamo and John Adamo, her husband, whose post office address is 8 Penhollow Lane, Hampton Falls, NH 03844" with respect to property identified as Lot 30B of Jupiter Plantation Phase II (the "Florida Property"); 5) a copy of a mortgage granted to Flagstar Bank for $135,000 on the Florida Property executed by both Dwana Adamo and the Debtor; 6) a transcript of a Rule 2004 examination of the Debtor held on December 19, 2006; 7) a "Notice of Filing" recorded by the Chapter 7 Trustee of the Debtor's bankruptcy estate in Palm Beach County, Florida with respect to the Florida Property; 8) a warranty deed dated January 19, 2007 from Dwana Adamo and John Adamo to Dwana Adamo with respect to the Florida Property; 9) a transcript of a Rule 2004 examination of Dwana Adamo held on April 17, 2007; 10) a transcript of a deposition of Dwana Adamo held on July 18, 2007; 11) receipts produced by Hannoush Jewelers reflecting certain repairs and purchases made by the Debtor between 2001 and 2007; 12) a copy of a Judgment of Divorce Nisi and a Separation Agreement pertaining to the Debtor's divorce from Donna Adamo, together with a list of personal items the Debtor purportedly requested that were located at the former marital home located at 8 Balmoral Road, Boxford, including, among other things, a juke box, a flintlock musket and powder horn, and a Beatles record collection; 13) a transcript of a 2004 examination of Donna Adamo held on January 31, 2007; 14) a transcript of a deposition of the Debtor held on January 15, 2004; 15) copies of the Debtor's tax returns for tax years 1998, 1999, 2000, 2001 and 2004, which reflect stock ownership in "Texaco" and/or "AT & T;" 16) documents pertaining to

3

a corporation known as Hawaiian Princess, Inc., including a) a document captioned "Corporation Intake;" b) e-mail correspondence between the Debtor and Kimberly A. Toy relating to corporate books for Hawaiian Princess, Inc. from APG, Inc., and c) a "Worksheet for New Asset Protection," which reflects i) that APG, Inc. would issue one bearer share for Hawaiian Princess, Inc. and ii) that the Debtor incurred fees of $960 payable to APG, Inc. for, among other things, preparation of two "friendly liens;" and 17) a mortgage to Hawaiian Princess, Inc., dated May 23, 2006, executed Dwana Adamo with respect to her property located at 8 Penhollow Lane, Hampton Falls, NH.

Based upon the pleadings, the discovery materials on file and the affidavits, the Court finds that there are no genuine issues of material fact and that the matter is ripe for summary judgment. *See* Fed. R. Civ. P. 56, made applicable to this proceeding by Fed. R. Bankr. P. 7056. For the reasons set forth below, the Court shall enter judgment in favor of Hyundai and against the Debtor and deny the Debtor a discharge.

## II. FACTS

The Debtor, a graduate of the Wentworth Institute with a degree in aeronautical engineering, is a sophisticated businessman. Prior to the commencement of his bankruptcy case, he had owned several automobile companies, specializing in exotic and classic cars, as well as an Isuzu automobile dealership and a Hyundai automobile dealership. Additionally, he owned a RE/MAX franchise for the sale of real estate and was a co-owner of an airplane.

The Debtor filed a voluntary Chapter 7 petition on June 29, 2006, listing his address

4

as 16 Santry Road, Marblehead, Massachusetts, which is his parents' home. He filed his Schedules, Statement of Financial Affairs and Statement of Current Monthly Income and Means Test Calculation (Form B22A) on the same day. He declared that the information that he provided in these documents was true and correct under penalty of perjury.

On Schedule A-Real Property, the Debtor represented that he owned no real property. That representation was false because at the time he commenced his case, he was the record title holder, together with his non-debtor spouse, Dwana Adamo, of the Florida Property. Although both the Debtor and Dwana Adamo represented that the Florida condominium belongs to her and that the Debtor's name "was included on the deed to the Florida condominium by Mary Whipple, who was a Paralegal charged with the closing of the property and Ms. Whipple did so without our authorization or knowledge," the evidence of the Debtor's ownership of the Florida Property is unequivocal. Title to the real estate was in his name and that of his spouse as a result of a warranty deed dated June 28, 2005 from John F. Wiesmann and Joan Wiesmann to "Dwana Adamo and John Adamo, her husband, whose post office address is 8 Penhollow Lane, Hampton Falls, NH 03844. It was not until after the commencement of the Debtor's bankruptcy case, on January 19, 2007, that the Debtor and Dwana Adamo, without notice or leave of court, executed a warranty deed whereby they conveyed the Florida property to Dwana individually.

On Schedule B-Personal Property, the Debtor listed $20 in cash and $200 worth of clothing, both of which he claimed as exempt on Schedule C-Property Claimed as Exempt. As will be discussed in more detail below, the Debtor's representations with respect to his

personal property were untrue as he owned, at the least, a wedding ring, an interest in a corporate entity known as Hawaiian Princess, Inc., and an interest in a trust known as the 93 Elliott Street Trust which owned a vacant lot in Beverly, Massachusetts. Moreover, his ex-spouse, Donna Adamo, testified that the Debtor requested items of personal property to be returned to him that were located at the former marital home, including a juke box, a Beatles record collection and other items. She identified the list of items which appeared on the letter head of International Motor Kars of Beverly. The Debtor denied ownership of these items, testimony that was contradicted by that of his ex-wife.

The Debtor listed no secured creditors on Schedule D-Creditors Holding Secured Claims, although he executed a mortgage on June 28, 2005, together with his spouse, in favor of Flagstar Bank in conjunction with the acquisition of the Florida Property in the amount of $135,000. The Debtor's spouse, Dwana, was employed as an account executive at Flagstar Bank. Although the Debtor in an affidavit filed on February 21, 2008 attempted to explain why he omitted the Florida Property from Schedules A and D on the ground that he contributed no money toward its acquisition and that the paralegal who prepared the deed and mortgage included his name on the deed "without our authorization or knowledge," the fact remains that the Debtor had an interest in the Florida Property at the commencement of his Chapter 7 case and executed the mortgage.

The Debtor listed no creditors on Schedule E-Creditors Holding Unsecured Priority Claims. That representation was untrue as the Debtor was in arrears on his obligation to pay his wife and minor child alimony and child support in the amount of $330 per week.

6

*See* 11 U.S.C. § 507(a)(1). The Debtor testified at a Rule 2004 examination held on December 19, 2006 that he "ruled it [listing the debt] out," adding that "[i]n my brain that's accurate because I hate her."

The Debtor listed two creditors on Schedule F-Creditors Holding Unsecured Nonpriority Claims: Hyundai and American Student Assistance. His list of unsecured creditors was inaccurate. The Debtor testified that he owed money to his father in the approximate amount of $221,000 and to a friend named Richard Haley from whom he borrowed more than $2,000. At his December 19, 2006 Rule 2004 examination, the Debtor testified that he regularly borrowed money from friends and considered them to be loans. He also owed money to American Express.

On Schedules I and J-Current Income and Expenditures of Individual Debtor(s), the Debtor represented that he had no income and no expenditures. On his Statement of Financial Affairs, he reiterated that information, indicating that he had received no income in 2004 or 2005 either. Although he listed a RE/MAX franchise on his Statement of Financial Affairs, he failed to list his other businesses.

On August 24, 2006, the Debtor amended Schedules I and J. On Schedule I, he stated: "Wife is ill with cancer and has not been able to work for over six months. We have not lived together for over six months and I do not not [sic] what sources of income she may have but she is not able to work at the present time and has not been able to work for the past six months." On amended Schedule J, the Debtor indicated that his father pays all his expenses. He did not list his on-going obligation to pay child support or alimony on

7

either his original Schedule J or his amended Schedule J.

As noted above, Hyundai examined the Debtor under oath on December 19, 2006. At that time, the Debtor testified that he lived with his parents and had been separated from Dwana Adamo for a year and a half, although he added that she visited him "[s]ometimes weekly" in Marblehead. He testified that he did not own a watch or a wedding ring.

During his Rule 2004 examination, the Debtor testified that he had never heard of Hawaiian Princess, Inc., that he had never heard of William S. Reed, and that he had never heard of Asset Protection Group, Inc. or APG, Inc. Despite his testimony, Hyundai submitted evidence that he prepared a "Worksheet for New Asset Protection." In that document, he identified himself as an APG Consultant and gave his address as P.O. Box 274, Hampton Falls, NH 03844, the same address used by his spouse, Dwana Adamo when she executed a mortgage to Hawaiian Princess, Inc. on May 23, 2006. On the Worksheet, the Debtor also requested William S. Reed to serve as a director and officer of Hawaiian Princess, Inc., as well as the issuance of one bearer share in Hawaiian Princess, Inc. Hyundai also introduced evidence that on May 22, 2006, the Debtor communicated by e-mail with an individual by the name of Kimberly A. Toy, a custodian of the records and a vice-president of APG, Inc. at kim@apgbulletproof.com about "our new corp [sic]," Hawaiian Princess, Inc., advising her that the address of the corporation was to be 380 Lafayette Rd. #11-197, Seabrook, NH 03874.

At her Rule 2004 examination held on April 17 2007, Dwana Adamo's testimony

contradicted that of her husband. She revealed that she was employed as an account executive with Flagstar Bank and in that capacity earned an annual salary that fluctuated between $425,000 and $130,000. She admitted to having significant assets. Nevertheless, the Debtor failed to list her income, either from employment or investments, on Schedule I or amended Schedule I.

Dwana Adamo discussed the couple's intention to become consultants for APG, Inc. and the use of "friendly liens" to protect privacy, but, more accurately, to shield equity in real estate from the reach of creditors. At a deposition held on July 18, 2007, Dwana Adamo testified again about Hawaiian Princess, Inc. and indicated that both she and her husband were involved in exploring business opportunities with APG as consultants.

She testified that she sold her house located at 8 Penhollow Lane and now resides at 8 Palomino Road in Gilford, New Hampshire. She stated that her husband stays with her two or three times per week. Although she was confronted with evidence of a truck and a boat located on her property, she denied owning them, and she denied that they belonged to the Debtor. She had no explanation as to why they were on her property. She also denied that her husband bought her jewelry, although the records from Hannoush Jewelers did not support that assertion and showed otherwise.

The Court takes judicial notice that, on February 5, 2008, the Debtor filed amended Schedules. On Amended Schedule B, he listed a wedding band valued at $200; stock in Hawaiian Princess, Inc., which he valued at $-0-, and an interest in the 93 Elliott Street Trust to which he ascribed an unknown value. According to the Debtor's ex-spouse, she

9

and the Debtor were contingent beneficiaries of the trust whose assets were to be used to fund the couple's youngest son's education. Her testimony was supported by documents from the couple's divorce proceeding.

The Debtor amended Schedule E to include his former spouse, Donna Adamo, as a priority creditor. He did not amend Schedule I to reflect his on-going obligation to pay alimony and child support.

Hyundai submitted evidence that the Debtor had a balance of $2,828.58 on his American Express card as of June 6, 2006; and a balance of $885.82 as of July 7, 2006 around the time he filed his Chapter 7 bankruptcy petition. The Debtor, or Dwana Adamo on his behalf, made payments to reduce the outstanding balance after he filed his bankruptcy petition. Activity on the card reflected charges made in New Hampshire; the billing address for the card at the time the Debtor filed his bankruptcy petition was P.O. Box 274, Hampton Falls, NH, 03844. Activity on the card also reflected pre- and postpetition payments to Wizefeed.

The Debtor submitted an affidavit *after* the hearing on Hyundai's Motion for Summary Judgment. In it, in addition to discussing the Florida Property, the Debtor admitted purchasing a men's wedding band from Hannoush Jewelers. He stated that although he wore the ring on his wedding day, he "rarely wore it thereafter" and put it away with his wife's jewelry, adding "I did not consider this to be jewelry."

With respect to Hawaiian Princess, Inc., he stated that he testified at length about it, contrary to his testimony at his Rule 2004 examination at which he represented that he

had never heard of Hawaiian Princess, Inc., or William S. Reed, or APG, Inc., or Asset Protection Group, Inc. After Hyundai successfully exposed the falsity of his testimony, the Debtor stated that Hawaiian Princess, Inc. "'never got off the ground" and "at the time of the filing was completely defunct." He added that "[w]e never received a penny in income from this business, never hired an employee, and never treated the entity as a business for tax purposes." The Court notes, however, that the corporation was formed in May of 2006, that Dwana Adamo recorded a mortgage dated May 23, 2006 to Hawaiian Princess, Inc. on June 1, 2006 on 8 Penhollow Lane in Hampton Falls, New Hampshire, and that the Debtor filed his Chapter 7 petition less than one month later, on June 29, 2006.

The Debtor stated in his affidavit that he "did not consider the trust account as being his asset," although he admitted receiving "some distributions from my ex-wife from the proceeds." Finally, the Debtor stated the following:

> I maintained two or three American Express accounts. I charged items, primarily food, for the benefit of myself and my wife. My wife, Dwana, made some payments on these accounts and also transferred balances to her account. Included in the monthly charges were payments to Wizefeed and Wizefinder for the maintenance of the data feed and software programs that analyze the stock market for my wife's stocks. This is not a trading account and I do not have a trading account. My wife had significant assets at the time of our marriage and earned regular income during our marriage. I did not own any stock at the time of our marriage nor have I held any stock during the marriage.

The Debtor never explained why he failed to list his wife's income on Schedule I or what happened to the stock which he owned and reported on his tax returns.

11

## III. DISCUSSION

### A. Summary Judgment Standard

The standard for summary judgment is well known and needs no exegesis. *See Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 763 (1st Cir. 1994)("It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law.").

### B. Analysis

Hyundai moved for summary judgment on grounds that the Debtor fraudulently concealed and transferred assets belonging to the bankruptcy estate, made false statements about his assets, and failed to adequately explain the loss of additional assets, relying upon provisions of 11 U.S.C. § 727(a). Section 727(a) provides in relevant part the following:

(a) The court shall grant the debtor a discharge, unless- . . .

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
>
>> (A) property of the debtor, within one year before the date of the filing of the petition;
>>
>> (B) property of the estate, after the date of the filing of the petition;
>
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the

> debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case–
>
> > (A) made a false oath or account; . . . .
>
> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;
>
> (6) the debtor has refused, in the case–
>
> > (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify. . . .

11 U.S.C.§ 727(a)(2)(A) and (B), (a)(3), (4)(A), (a)(5), and (a)(6)(A).

The Court need not address all applicable subsections of 11 U.S.C. § 727(a) raised by Hyundai in its Complaint and Motion for Summary Judgment. Section 727(a)(4)(A) and (a)(2)(B) permit resolution of the Motion for Summary Judgment in Hyundai's favor.

In Boroff v. Tully (In re Tully), 818 F.2d 106 (1st Cir. 1987), the United States Court of Appeals for the First Circuit explained the circumstances when the exception to discharge under section 727(a)(4)(A) applies. It stated:

> Under § 727(a)(4)(A), the debtor can be refused his discharge only if he (i) knowingly and fraudulently made a false oath, (ii) relating to a material fact. The burden of proof rests with the trustee, In re Shebel, 54 B.R. 199, 202 (Bankr. D.Vt. 1985), but "once it reasonably appears that the oath is false, the burden falls upon the bankrupt to come forward with evidence that he has not committed the offense charged." Matter of Mascolo, 505 F.2d 274, 276 (1st Cir.1974).

13

818 F.2d at 110. The court added:

> The statute, by its very nature, invokes competing considerations. On the one hand, bankruptcy is an essentially equitable remedy. As the Court has said, it is an "overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." Bank of Marin v. England, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966). In that vein, the statutory right to a discharge should ordinarily be construed liberally in favor of the debtor. Matter of Vickers, 577 F.2d 683, 687 (10th Cir.1978); In re Leichter, 197 F.2d 955, 959 (3d Cir.1952), *cert. denied*, 344 U.S. 914, 73 S.Ct. 336, 97 L.Ed. 705 (1953); Roberts v. W.P. Ford & Son, Inc., 169 F.2d 151, 152 (4th Cir.1948). "The reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural." Dilworth v. Boothe, 69 F.2d 621, 624 (5th Cir.1934).
>
> On the other hand, the very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. *The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction.* As we have stated, "[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." Mascolo, 505 F.2d at 278. Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight. *See* In re Tabibian, 289 F.2d 793, 797 (2d Cir.1961); In re Shebel, 54 B.R. at 202. The bankruptcy judge must be deft and evenhanded in calibrating these scales.

Id.

This Court has rarely seen a case in which a debtor so completely failed to put forward "complete, truthful, and reliable information" at the outset of the case. The Debtor required Hyundai to engage in the laborious tug-of-war decried by the First Circuit. In this Court's view, the simple truth has yet to see the light of day. The Debtor's Schedules, Statement of Financial Affairs, and testimony under oath at his Rule 2004 examination epitomize, not the honest but unfortunate debtor, but the dishonest debtor. Neither the

14

Debtor's testimony nor his Schedules have integrity. The Court finds that the evidence submitted by Hyundai with respect to the falsity of Debtor's Schedules, Statement of Financial Affairs, and testimony at his Rule 2004 examination is overwhelming and unequivocally establishes its entitlement to summary judgment.

The Court finds that the Debtor's affidavit, which he submitted approximately twenty months after the filing of his bankruptcy petition, was inadequate to create genuine issues of material fact. Through it, he did not provide sufficient information about his assets and financial condition or the reason for the falsity of Schedules, Statement of Financial Affairs, and testimony at his Rule 2004 examination. His affidavit was neither credible nor meaningful in view of his prior sworn statements. No purpose would be served by affording the Debtor more opportunities to further amend his Schedules to accurately list his unsecured creditors or disclose his wife's sources of income. The Debtor did not come forward with evidence of his assets "until he was caught." The Chapter 7 Trustee and the creditors of the bankruptcy estate are entitle to a fair assessment of the Debtor's financial condition to assess their position. The Bankruptcy Code proscribes the Debtor's unilateral assessment of what he thinks his creditors are entitled to know. The Debtor still has failed to satisfactorily explain the loss of assets he obtained from his first marriage or the stock that appeared on his tax returns.

Adding to these transgressions, the Debtor and Dwana Adamo, in a blatant violation of 11 U.S.C. § 727(a)(2)(B), transferred ownership of the Florida Property from their joint names to Dwana individually without notice or a Court order.

15

## IV. CONCLUSION

Upon consideration of the foregoing, the Court shall enter an order granting Hyundai's Motion for Summary Judgment and denying the Debtor a discharge.

By the Court,

*[signature: Joan N. Feeney]*

Joan N. Feeney
United States Bankruptcy Judge

Dated: April 11, 2008
cc: Rebecca L. Sipowicz, Esq., Harvey Alford, Esq., Kathleen P. Dwyer, Esq., U.S. Trustee